IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEAK N SHAKE ENTERPRISES, INC., and STEAK N SHAKE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> iFOOD, INC., SHASHI K. RATTAN, and CHANDRU C. GURNANI, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No.: 1:21-cv-2131 |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiffs Steak n Shake Enterprises, Inc. and Steak n Shake, LLC, by counsel, for its Complaint against Defendants iFood, Inc., Shashi K. Rattan, and Chandru C. Gurnani, states as follows:

**INTRODUCTION**

1.  This action arises out of the termination of (A) written franchise and license agreements between Steak n Shake Enterprises, Inc., as franchisor, and Steak n Shake, LLC, as licensor, on the one hand, and Defendants iFood, Inc., Shashi K. Rattan, and Chandru C. Gurnani, as franchisees, licensees, and guarantors, and (B) a written area development agreement between Steak n Shake Enterprises, Inc. and defendant iFood, Inc.  After Defendants materially breached their obligations under the franchise and license agreements and failed to cure those defaults after having been given repeated notice of their defaults and an opportunity to cure, Steak n Shake Enterprises, Inc. and Steak n Shake, LLC terminated the franchise and license agreements for cause.  Likewise, after defendant iFood, Inc. breached the area development agreement by failing

1

to establish restaurants in accordance with the development schedule set forth in the agreement, Steak n Shake Enterprises, Inc. exercised its express right to terminate that agreement for cause.

2. Notwithstanding termination of the franchise and license agreements and area development agreement, defendants however continue to use the Steak n Shake name and marks in connection with the operation of competitive restaurants at the same locations as their former franchised Steak n Shake restaurants, and to hold their restaurants out to the public as authentic Steak n Shake restaurants, which they are not.

3. By this action, Steak n Shake Enterprises, Inc. and Steak n Shake, LLC seek (A) preliminary and permanent injunction relief enjoining defendants' trademark infringement and unfair competition, and ordering defendants to perform their post-termination obligations under their franchise and license agreements and area development agreement, including their noncompetition covenants, (B) recovery of the amounts owed to them by defendants, the damages each has sustained by reason of defendants' breaches and the resulting termination of the franchise and license agreements and area development agreement, and (C) an award of the attorneys' fees and costs incurred by Steak n Shake Enterprises, Inc. and Steak n Shake, LLC, as provided for in the parties' agreements.

**PARTIES**

4. Plaintiff Steak n Shake Enterprises, Inc. ("SNS Enterprises") is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

5. Plaintiff Steak n Shake, LLC ("SNS") is an Indiana limited liability company with its principal place of business in Indianapolis, Indiana. None of SNS's members are a citizen or resident of Delaware, North Carolina or California.

6. Defendant iFood, Inc. ("iFood") is a Delaware corporation with a principal place of business in North Carolina.

7. Defendant Shashi K. Rattan ("Rattan") is a citizen and resident of California.

8. Defendant Chandru C. Gurnani ("Gurnani") is a citizen and resident of North Carolina.

9. iFood, Rattan and Gurnani collectively are the "Defendants."

## JURISDICTION AND VENUE

10. The Court has original subject matter jurisdiction of this civil action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States relating to trademarks, and all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. The Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332, because this is a civil action between citizens of different States wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. Venue is proper in this judicial district because each Defendant consented to exclusive venue in this judicial district.

## RELEVANT FACTS

12. Steak n Shake Inc., SNS Enterprise's parent, has continuously operated Steak n Shake restaurants specializing in premium burgers and hand-dipped milkshakes since 1934. As of December 31, 2020, there were over 550 company operated and franchise operated Steak n Shake restaurants in 30 states across the United States and Europe. In addition, SNS Enterprises grants

franchises to qualified persons to establish and operate Steak n Shake restaurants pursuant to written franchise agreements with SNS Enterprises, and written license agreements with SNS.

### The Steak n Shake Name and Marks

13. To identify the source, origin, and sponsorship of Steak n Shake products and services, and to distinguish those products and services from those established, made, offered, and sold by others, SNS Enterprises, SNS and their authorized franchisees and licensees have extensively used certain trademarks, service marks, trade names, logos, emblems, commercial symbols, and indicia of origin, including but not limited to the "Steak n Shake" mark and related marks (the "Steak n Shake Marks"), in connection with the operation of authorized Steak n Shake restaurants.

14. The Steak n Shake Marks are owned by SNS, and are licensed to authorized SNS Enterprises' franchisees such as Defendants for use solely in connection with their operation of franchised Steak n Shake restaurants pursuant to written franchise agreements with SNS Enterprises.

15. The Steak n Shake Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registration of the Steak n Shake Marks continues in full force and effect.

16. SNS has given notice to the public of the registration of the Steak n Shake Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that it and its authorized licensees remain the exclusive users of the Steak n Shake Marks.

17. Steak n Shake Inc., SNS Enterprises, and SNS, and their authorized franchisees and licensees have continuously used the Steak n Shake Marks in interstate commerce in connection

with the operation of Steak n Shake restaurants and the promotion, offer and sale of the products and services they offer throughout the United States and Europe, since the date of their registration.

18. Steak n Shake Inc., SNS Enterprises, and SNS, and their authorized franchisees and licensees have extensively advertised and promoted the Steak n Shake Marks and the products and services offered in association with those marks throughout the United States through various media. As a result of such efforts and the substantial amounts spent in connection therewith, the products and services offered at Steak n Shake restaurants under the Steak n Shake Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

### Defendant iFood's Area Development Agreement

19. On August 31, 2011, iFood entered into a written Area Development Agreement with SNS Enterprises pursuant to which it initially committed to establish ten (10) franchised Steak n Shake restaurants in a defined area in accordance with a specified development schedule ("Area Development Agreement"). A true, correct and authentic copy of the Area Development Agreement is attached hereto as Exhibit A and incorporated by reference herein.

20. The Area Development Agreement was amended on November 1, 2016. As amended, the development schedule for iFood was extended to allow iFood additional time to establish the ten (10) franchised Steak n Shake restaurants (the "Amendment to Area Development Agreement"). A true, correct and authentic copy of the Amendment to Area Development Agreement is attached hereto as Exhibit B and incorporated by reference herein.

### Defendants' Franchise and License Agreements

21. On August 31, 2011, Rattan and Gurnani entered into a franchise and license agreement with SNS Enterprises and SNS, respectively, for the operation of a franchised Steak n

Shake restaurant located at 2840 Millbrook Road, Raleigh, North Carolina, 27604 (the "Millbrook Road Agreement").  A true, correct and authentic copy of the Millbrook Road Agreement is attached hereto as <u>Exhibit C</u> and incorporated by reference herein.

22. On July 28, 2014, iFood entered into a franchise and license agreement with SNS Enterprises and SNS, respectively, for the operation of a franchised Steak n Shake restaurant located at 5900 Duraleigh Road, Raleigh, North Carolina, 27612 (the "Duraleigh Road Agreement").  A true, correct and authentic copy of the Duraleigh Road Agreement is attached hereto as <u>Exhibit D</u> and incorporated by reference herein.

23. Defendants Rattan and Gurnani, personally guaranteed the obligations under the Duraleigh Road Agreement.

24. On April 27, 2017, iFood entered into a franchise and license agreement with SNS Enterprises and SNS, respectfully, for the operation of a franchised Steak n Shake restaurant located at 116 Grand Central Mall, Vienna, West Virginia 26104 (the "Grand Central Mall Agreement").  A true, correct and authentic copy of the Grand Central Mall Agreement is attached hereto as <u>Exhibit E</u> and incorporated by reference herein.

25. Defendants Rattan and Gurnani personally guaranteed the obligations under the Grand Central Mall Agreement.

26. On March 15, 2018, iFood entered into a franchise and license agreement with SNS Enterprises and SNS, respectfully, for the operation of a franchised Steak n Shake restaurant located at 4202 Fayetteville Road, Garner, North Carolina, 27529 (the "Fayetteville Road Agreement").  A true, correct and authentic copy of the Fayette Road Agreement is attached hereto as <u>Exhibit F</u> and incorporated by reference herein.

27. Defendants Rattan and Gurnani personally guaranteed the obligations under the Fayetteville Road Agreement.

28. The Millbrook Road Agreement, Duraleigh Road Agreement, the Grand Central Mall Agreement, and Fayetteville Road Agreement and collectively are the "Franchise Agreements.

29. Under the Franchise Agreements, Defendants specifically acknowledged and agreed to, among other things, (a) pay a service fee calculated on the gross receipts from each Steak n Shake location ("Royalty and System Fee"); (b) pay certain advertising and marketing fees for each Steak n Shake location ("Advertising and Marketing Fees"); (c) maintain the interior and exterior condition and appearance of their Steak n Shake restaurants in compliance with the standards of quality, service and cleanliness as set forth in the Franchise Agreements; (d) purchase approved equipment only from those sources approved by SNS Enterprises; and (e) purchase food products and other items only from sources approved by SNS Enterprises.

30. The Franchise Agreements expressly provide for termination of the Franchise Agreements in the event Defendants fail to comply with any of the foregoing conditions.

31. The Defendants further agreed that, upon termination of the Franchise Agreements, they would cease any and all use of the Steak n Shake Marks, and any methods associated with those marks, pay SNS Enterprises and SNS all damages, together with interest, costs and attorneys' fees caused by any default or termination, and, at SNS Enterprises' option, sell to SNS Enterprises any unique Steak n Shake restaurant equipment, fixtures, signage and décor.

**Defendants' Breaches and Failure to Cure**

32. The Defendants breached the Franchise Agreements and the Area Development Agreement.

33. Under the Area Development Agreement, as amended, iFood was required to open its tenth (10th) franchised Steak n Shake restaurant on or before November 15, 2020.

34. Section 7.04 of the Area Development Agreement provides that iFood's failure to meet its development schedule shall constitute a default under the agreement.

35. iFood breached the area development agreement by failing to open three (3) more restaurants by November 15, 2017.

36. Section 4.04 of the Area Development Agreement provides that if iFood breaches the agreement or fails to fully and completely perform all of the covenants set forth therein, the balance of the area development fee held by SNS Enterprises at the time of the breach shall be forfeited to SNS Enterprises as liquidated damages.

37. Additionally, Section 7.06 of the Area Development Agreement provides that upon the occurrence of any of default by iFood, SNS Enterprises may terminate the Area Development Agreement effective immediately upon notice to iFood.

38. On January 4, 2018, written notice was given to iFood regarding iFoods default under the Area Development Agreement.  iFood was advised that unless it promptly cured the defaults by complying with the schedule set forth in the Area Development Agreement, SNS Enterprises and SNS would terminate the Area Development Agreement and Franchise Agreements for cause.  A true, correct and authentic copy of the January 4, 2018, notice is attached hereto as <u>Exhibit G</u> and incorporated by reference herein.

39. The Defendants also failed to pay the Royalty and System Fees, Advertising and Marketing Fees and other miscellaneous fees due under the Franchise Agreements.

40. On August 14, 2019, written notice was given to the Defendants regarding the continued defaults under the Area Development Agreement and regarding the outstanding fees

owed by the Defendants under the Franchise Agreements.  The Defendants were advised that unless they promptly cured the defaults by complying with the schedule set forth in the Area Development Agreement and remitted all sums currently due, SNS Enterprises and SNS would terminate the Area Development Agreement and Franchise Agreements for cause.  A true, correct and authentic copy of the August 14, 2019, notice is attached hereto as <u>Exhibit H</u> and incorporated by reference herein.

41. The Defendants failed to cure the defaults under the Area Development Agreement and Franchise Agreements.

42. On February 11, 2020, and May 20, 2021, written notice was again given to Defendants regarding the continued defaults under the Area Development Agreement and the outstanding fees owed under the Franchise Agreements.  The Defendants were advised that unless they promptly cured the defaults by complying with the schedule set forth in the Area Development Agreement and remitted all sums currently due, SNS Enterprises and SNS would terminate the Area Development Agreement and Franchise Agreements for cause.  True, correct and authentic copies of the February 11, 2020, and May 20, 2021, notices are attached hereto as <u>Exhibit I and J</u> respectively and incorporated by reference herein.

43. In July 2021, SNS Enterprises became aware that the Defendants were failing to maintain the requisite repair, appearance and cleanliness of their Steak n Shake restaurants.

44. SNS Enterprises also became aware that the Defendants purchased equipment such as a shake machine from a supplier that was not approved by SNS Enterprises, and purchased and were purchasing food and beverages from suppliers that were not approved by SNS Enterprises.

45. On July 12, 2021, written notice of termination was given to Defendants due to the continued defaults under the Area Development Agreement, the outstanding fees owed under the

Franchise Agreements and the failure of Defendants to cure such breaches even after having received written notice of default. The Defendants were advised to immediately cease operations and close their restaurants. A true, correct and authentic copy of the July 12, 2021, notice is attached hereto as <u>Exhibit K</u> and incorporated by reference herein.

46. As a result of Defendants' breach, SNS Enterprises is entitled to retain the $120,000 balance of the area development fee.

### **Defendants' Post-Termination Obligations**

47. Defendants each assumed certain post-termination obligations under the Franchise Agreement, including, without limitation, (1) to cease any and all use of the Steak n Shake Marks and proprietary and confidential information; (2) to de-identify their former franchised restaurant locations as being or having been associated with Steak n Shake, and to repaint and change the exterior and interior of the restaurants to distinguish them from a Steak n Shake restaurant; (3) to assign the telephone number and web address associated with their former franchised Steak n Shake restaurants to SNS Enterprises; and (4) to pay all amounts owed to SNS Enterprises and damages sustained by SNS Enterprises by reason of termination of the Franchise Agreements.

48. In addition, Defendants agreed that, for a two year period following termination of the Franchise Agreements, they would not have any interest in a competing business located within five miles of their former franchised Steak n Shake restaurants or any other Steak n Shake or Steak n Shake Signature restaurant.

49. iFood agreed in the area development agreement that for a two-year period following termination of that agreement it would not have any interest in a competing business located within its former development area.

**Defendants' Failure to Comply
With Their Post-Termination Obligations**

50.     Notwithstanding termination of the franchise and license agreements and the area development agreement, Defendants have failed and refused to comply and continue to fail to comply with their post-termination obligations under their respective agreements.

51.     Defendants continue to operate unauthorized Steak n Shake restaurants at the same locations as their former franchised Steak n Shake restaurants, and to use the Steak n Shake Marks in connection therewith, falsely holding their restaurants out to the public as authorized and authentic Steak n Shake restaurants when they are not.

52.     Defendants also refuse to perform or to comply with their respective post-termination covenants not to compete under the Franchise Agreements and Area Development Agreement.  Instead, defendants continue to operate competitive businesses at the same locations as their former franchised Steak n Shake restaurants, and to offer products and services that are identical to those offered by defendants at their former franchised Steak n Shake restaurants.

53.     Defendants also continue to use SNS Enterprises' proprietary and confidential information in connection with the operation of their competitive businesses.

**COUNT I - TRADEMARK INFRINGEMENT**

54.     SNS Enterprises and SNS repeat and reallege ¶¶ 1 through 53 of their Complaint as and for this ¶ 54, as if fully set forth herein.

55.     Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of the Steak n Shake Marks, and are likely to cause consumer confusion or mistake and deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

56.     Defendants' acts were, and continue to be, knowing and willful.

57. As a direct and proximate result of defendants' infringement, SNS Enterprises and SNS have been and will continue to be substantially injured in their business, including their business reputation and goodwill associated with the Steak n Shake Marks, resulting in lost revenues and profits, and diminished goodwill.

58. SNS Enterprises and SNS have no adequate remedy at law because the Steak n Shake Marks are unique and represent to the public the Steak n Shake identity, reputation, and goodwill, such that damages alone cannot fully compensate SNS Enterprises and SNS for defendants' misconduct.

59. Unless enjoined by the Court, defendants will continue to use and to infringe the Steak n Shake Marks to SNS Enterprises' and SNS' irreparable injury. This threat of future injury to SNS Enterprises' and SNS' business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued use of the Steak n Shake Marks, and to ameliorate and mitigate SNS Enterprises' and SNS' injuries.

**COUNT II - UNFAIR COMPETITION**

60. SNS Enterprises and SNS repeat and reallege ¶¶ 1 through 59 of their Complaint as and for this ¶ 60, as if fully set forth herein.

61. Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62. Defendants' acts were, and continue to be, knowing and willful.

63. As a direct and proximate result of Defendants' unfair competition, SNS Enterprises and SNS have been and will continue to be substantially injured in their business, including their goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

64. SNS Enterprises and SNS have no adequate remedy at law because the Steak n Shake Marks are unique and represent to the public the Steak n Shake identity, reputation, and goodwill, such that damages alone cannot fully compensate SNS Enterprises and SNS for Defendants' misconduct.

65. Unless enjoined by the Court, defendants will continue to compete unfairly with SNS Enterprises and SNS to their irreparable injury. This threat of future injury to SNS Enterprises' and SNS' business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition, and to ameliorate and mitigate their injuries.

### COUNT III - BREACH OF CONTRACT – SPECIFIC PERFORMANCE

66. SNS Enterprises and SNS repeat and reallege ¶¶ 1 through 65 of their Complaint as and for this ¶ 66, as if fully set forth herein.

67. Defendants' failure and refusal to comply with their post-termination obligations under the Franchise Agreements, including their obligations under their noncompetition covenants, the obligation to de-identify their Steak n Shake restaurants, the obligation to cease all use of the Steak n Shake Marks, and the obligation to cease all use of SNS Enterprises' proprietary and confidential information, constitute material breaches of the Franchise Agreements.

68. As a result of Defendants' continuing breaches, SNS Enterprises and SNS have suffered and will continue to suffer actual, substantial, and irreparable harm, including but not limited to loss of customer goodwill and loyalty, franchise system instability, the inability to

refranchise the territory formerly serviced by defendants' franchised Steak n Shake restaurants, lost profits, diminution in the value of its proprietary and confidential information, and loss of competitive advantage.

69. Further, SNS Enterprises and SNS have been and will be irreparably harmed by Defendants' actions, and monetary damages are an insufficient remedy in that they cannot fully and adequately compensate SNS Enterprises and SNS for the continuing damage to the value of SNS Enterprises' and SNS' goodwill, reputation, proprietary and confidential information, and its inability to refranchise the territory, all of which are caused by defendants' ongoing breaches.

70. Absent injunctive relief enjoining their misconduct and ordering specific performance of their post-termination obligations, Defendants' breaches will continue.

### COUNT IV – BREACH OF CONTRACT – DAMAGES

71. SNS Enterprises and SNS repeat and reallege ¶¶ 1 through 70 of their Complaint as and for this ¶ 71, as if fully set forth herein.

72. Defendants' conduct constitutes material breaches of the Franchise Agreements.

73. As a direct and proximate result of Defendants' material breaches and the resulting termination of the Franchise Agreements, SNS Enterprises and SNS have sustained damages in an amount in excess of $75,000, exclusive of interest and costs, to be proven at trial.

### COUNT V – BREACH OF GUARANTIES – DAMAGES

74. SNS Enterprises and SNS repeat and reallege ¶¶ 1 through 73 of their Complaint as and for this ¶ 74, as if fully set forth herein.

75. Defendants Rattan and Gurnani conduct constitute material breaches of their personal guarantees of the Franchise Agreements.

76. As a direct and proximate result of these defendants' breaches of their guarantees, SNS Enterprises has sustained damages in an amount in excess of $75,000, exclusive of interest and costs, to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** SNS Enterprises and SNS respectfully pray for the following relief against defendants, jointly and severally, as follows:

A. A preliminary injunction enjoining Defendants, and each of them, and their respective agents, servants and employees, and those people in active concert or participation with them from:

1. Using the Steak n Shake Marks, or any trademark, service mark, logo, or trade name that is confusingly similar to the Steak n Shake Marks;

2. Otherwise infringing the Steak n Shake Marks or using any similar designation, alone or in combination with any other components;

3. Passing off any products or services as those of Steak n Shake or Steak n Shake's authorized franchisees;

4. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services;

5. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with Steak n Shake or Steak n Shake's franchisees, or with any of their products or services; and

6. Unfairly competing with Steak n Shake or Steak n Shake's franchisees, in any manner;

B.      A preliminary injunction directing defendants, and each of them, and their respective agents, servants and employees, and those people in active concert or participation with them, to fully perform their post-termination obligations, including, without limitation, their obligations under their noncompetition covenants;

C.      An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, logo items, and advertisements in the possession of defendants, their agents, servants and employees, and any person in active concert or participation with them, bearing any of the Steak n Shake Marks, and all plates, molds, and other means of making the same, if any, be delivered to SNS at defendants' cost;

D.      An order that defendants file with the Court and serve upon SNS Enterprises' and SNS' counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

E.      An order that defendants account and pay over to SNS all gains, profits and advantages derived by them as a result of their infringement of the Steak n Shake Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F.      An order that defendants pay to SNS Enterprises and SNS such damages as they have sustained by reason of defendants' trademark infringement and unfair competition, and that, because of the willful nature of said infringement, the Court enter judgment for SNS Enterprises and SNS in an amount equal to three times the

           amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. 1117;

G.    An award of the costs and expenses, including reasonable attorneys' fees and costs, incurred by SNS Enterprises and SNS in connection with this action;

H.    Judgment in favor of SNS Enterprises and SNS and against defendants, jointly and severally, in amounts to be proven at trial; and

I.    Such other and further relief as the Court deems just and proper.

Dated: July 28, 2021                                        Respectfully submitted,

                                                                                 s/ Scott S. Morrisson  
                                                                                  Scott S. Morrisson, Atty. No. 11633-49  
                                                                                  Krieg DeVault LLP  
                                                                                  12800 N. Meridian Street, Suite 300  
                                                                                  Carmel, IN 46032-5407  
                                                                                  Telephone:  (317) 238-6201  
                                                                                  Facsimile:  (317) 636-1507  
                                                                                  E-mail: smorrisson@kdlegal.com

                                                                                  and

                                                                                  Kay Dee Baird, Atty. No. 28821-73  
                                                                                  Krieg DeVault LLP  
                                                                                  One Indiana Square, Suite 2800  
                                                                                  Indianapolis, IN 46204  
                                                                                  Telephone:  (317) 238-6306  
                                                                                  Facsimile:  (317) 636-1507  
                                                                                  E-mail: kbaird@kdlegal.com

                                                                                  *Attorneys for Steak n Shake Enterprises, Inc. and Steak n Shake, LLC*